Good morning, Your Honor. My name is Ethan Ballow. I represent a woman by the name of Gladys Vasquez Valenzuela. Today, with the 20 minutes the Court has provided to appellants, I will present on the substantive issues of guilt. I will begin with the jury instruction argument, which dovetails with the 412 argument. If we have time and the Court's indulgence, we will discuss Batson. I am joined today at counsel's table by co-appellant's counsel and by the audience. This is Mr. Dana Cephas. He represents Gabriel Mendez. This is Jeffrey Price. He represents Maria de los Angeles Consente. This is Karen Bucher. She represents Mirna Vasquez Valenzuela. And finally, but not least, we have Mr. Richard Levy. He represents Maribel Rodriguez Vasquez. With respect to the myriad sentencing issues, we prefer to submit under papers. Unless the Court has specific questions for a particular defendant, we'll just address substantive issues this morning. I will watch my own clock. I will hope for the generosity you've provided, Your Honor. You know, before you get in, I do have one sentencing issue, and that is it's a possibility that as to Maribel, there's no obstruction of justice enhancement that's appropriate. Would that, in fact, affect the sentence if we were to set aside that enhancement? I think the procedural error, I think the Court's practice is to remand it for the district judge to react to it. I don't think it would change the guideline range. It wouldn't change the guideline range, but I think the Court's practice is to have the district court make a new evaluation of the sentence based on a corrective review. If on that one point. Okay. I got it. Okay. Thank you. Your Honors, I would like to begin with the instructional issue, but I will begin by quoting our colleagues at the government who prosecuted the case at the 412 hearing because, especially for the discussion you just had about 1591, there is a dispute about what the statute criminalizes. This is from the government. And for excerpts of record, the sealed excerpts of record 153. 18 U.S.C. section 1591 is not a forced prostitution statute. I'm going to give ellipses. The prosecutor continues, it does not matter whether a woman was a prostitute for 10 years in Guatemala or whether she came here willingly. If the defendants beat her, if the defendants threatened her, if the defendants locked her in their house, if the defendants raped her or knew that one of their colleagues was raping her in order to force that woman to consent to engage as a prostitute for their financial benefit, that's a violation. We disagree with that vehemently. This court in Todd has definitively interpreted 1591, and it is not a forced prostitution statute. It is a trafficking with knowledge statute. And I had the benefit this morning of sitting through the last argument, which a lot of it concerned what the complaining witnesses or victims' state of mind was, depending on your point of view. We respectfully contend their state of mind does not control a statute with a 15-year mandatory minimum. Under Todd, it's trafficking, whether it's inducement or enticement, and at the time of the trafficking, knowledge in the perpetrator that he or she will use force in the future to get that person to commit commercial trafficking. But, you know, if that's your theory of the case, I still have trouble seeing how your clients can prevail unless they say, I had no idea what I was going to do in the future. No. Well, they're not going to say that. I didn't know what I was going to do in the future because, I mean, they're not talking about behavior even of other people. They're talking about their own behavior in the future. That is correct. But the difference is, and I'll start with the instruction argument, we'll agree that instruction number 20, before Todd comes down, correctly recites what Todd will tell us. Trafficking, at the time of trafficking, knowledge that force will be used. And he gets it right. Force for our coercion. Force for the coercion. Any of the three. Or a combination thereof. So four. Or threats thereof. Or threats thereof. We're up to five. I hope we stay there. That's the knowledge of the defendants at the time. And we say, the defendants say, we like this instruction. It's correct. Because their theory of the case was, we knowingly recruited known prostitutes. That we, the people who were working at Christina's Bar, were associated with Christina's Bar, people that wanted to come to America, were willing to engage in this type of work. The women clients for the five appellants here were all former prostitutes. They all came here this way. They were all prostitutes in the United States, here in Los Angeles. That they knowingly recruited these people through Chepe to come and do this work. And because of that, they did not, they reasonably, they would not require force, threats, or coercion to get them to engage in this business because they were hiring professionals. And they. And how old were they at the time of these transactions? My clients are the complainants. It's disputed about the complainants. The complainants allege girls as low as 14. The jury didn't make a finding on any girl even being a minor. So it's disputed. So, but for your argument to be successful across the board, it has to be that, gee, you know, we understand that these 14, 15-year-old girls, they don't require any coercion at all. They're just happy to do this. We didn't say they were 14, 15-year-old girls. We said they were all a majority. So I think for my defense to work, I get to present my defense with all great respect, Your Honor. I don't have to accept what my colleague wants to say. It's his prosecution. But that instruction was correct. And then what happened, and we asked for that instruction, and that was a proper instruction under TARP. And what happened is the district court gave first instruction number 20, excuse me, number 23. And what number 23 said was it would be sufficient for a violation. And I'm going to quote the instruction. It is sufficient if the government has shown that the defendant's use of force, fraud, or coercion was sufficient to compel a reasonable person in the alleged victim's situation to engage in commercial sex acts in light of the totality of the circumstances. And that is not sufficient for a conviction under 1591. Well, but that instruction wasn't addressed to the knowledge about will be used. That instruction was addressed to force, fraud, or coercion. But the way the instruction reads, and I should have given the first sentence of it because I did start reading in the middle of it, Your Honor. The first sentence of it is to establish a violation of Title 18, United States Code, Section 1591, sex, trafficking, comma. The government does not need to link any specific commercial sex act to any particular act of force, fraud, or coercion on the part of the defendant. Was there no other instruction directed to knowledge? There was the instruction 20, which I said, which also defined coercion pursuant to 1592E2, and defined that correctly. But nobody objected to 20, 23, or 24. I would respectfully disagree with that. Well, they objected to a prior version of 23. Well, the version that became 23. What happened was the government proffered 23 and 24 amongst others, but we're only complaining about 23 and 24 today. Then the defense objects. The judge makes some changes. But then at the final instruction conference, all the lawyers say they answered the question in the affirmative that they had no objection to it. I think that's a correct recitation. I'd like to make a more robust recitation that fills in some gaps. Correct. The defendants objected. They objected that these instructions, among other grounds, three are important here, that they were unnecessary, that they were argumentative, and that they were covered in other instructions. And the district court, before the instruction conference, handed out what became these final instructions. And what the district court said with respect to 23 and 24, I believe some version of this is appropriate and will be given. This is my best version of what will be given. And I'll take further comment on that. So I'll respond to your point, if I may, Judge Bennett, in two ways. One, at that point, the objection from counsel was these are completely unnecessary. They're completely argumentative. They should be given a no version. And they made that record. So when a district court says to you, thank you, Mr. Ballo, I've heard you, and now I'm ruling, and I'm ruling against you on your major point, at that point under pain it becomes futile to say, Your Honor, if I may have one more chance to convince you. Now maybe a lawyer can do that, depending on the dynamic with the district judge. Some are more pleasurable courtrooms to operate in than others. But under pain, once the judge has overruled a specific objection, you're preserved under Rule 51. You've satisfied the obligation, so you don't go to plain error review. The other piece I would say is when they say no objection, I think the government does an excellent job of using that transcript, but I think it's misusing it. And essentially, and a good trial lawyer, maybe a better trial lawyer, says no further objection. No further objection. No further objection, Your Honor. And Lord knows district judge loves when you say that. It's almost like saying exception these days, because you're pointing out I still disagree when you don't need to because the jurist has ruled on your objection. And we would respectfully submit that satisfies Rule 51. But if it doesn't, if you disagree with me, Your Honor, it's still plain error, and I would suggest that the objections we did raise would be a reason for this Court to exercise its discretion to notice the error, because it's not like Judge Morrow, we sandbagged her, that she had no idea we were objecting to these, that she was ill-prepared to consider it. That's what Rule 51 says. Unfair. We had an able district judge who never gave him or her a shot. Judge Morrow considered these issues, considered briefing, and said, you're wrong. And we respectfully contend Judge Morrow is wrong. She misconstrued the statute. And she construed it ultimately how Judge Smith of this Court has interpreted it in concurrence in Todd. But Todd controls. And that's why the Seventh Circuit case, I think it is CFIS, the government presented it in Rule 28. No, I disagree with that. As I read Judge Myland-Smith's concurrence in Todd 2, he says you need knowledge as to what will happen, and indeed it must happen. And this instruction is directed to the it must happen. But Judge Smith doesn't say it's sufficient that it happens. Judge Smith says you have to know that it's going to happen, that it will be used, and that it also has to happen. That's correct. And I'm saying that that's where Judge Smith errs. The majority in Todd 2, which I just refer to as Todd, because I think Todd was withdrawn and doesn't exist anymore. But, however, we characterize it, Your Honor. The majority says it doesn't have to happen. It's the mens rea of the defendant that controls. Now, obviously, for two reasons, the government is likely going to bring cases where it does happen. One, that's how you prove knowledge. It's really good evidence that someone knows it's going to happen if they do it. And two, there's a sentencing provision, the B section of 1591, B2, I believe it is, that sets out the 15-year mandatory minimums, will plug in if you have effectuated by force. And to obtain that sentencing, either supplemental punishment, the government is going to want to bring cases or present that evidence to a jury. But it is not an element. It wasn't part of 20 and it's not part of Todd. And I think that's what controls here. We have to look at the women. And so I think that's why 23 is problematic. It told this jury. And even if you're saying it was just meant for the course of element, as you read it, Judge, it is confusing. I haven't seen the instructions from Lippitt, or excuse me, the last case, which I definitely cannot pronounce. But these told the jury it is sufficient. So we don't know whether the jury would struggle with this case. One-third of the verdict form went undecided. Whether they just said, we can't figure out what these women thought at the time of recruitment, but we're going to credit some of the testimony about coercion or threats. And so they convicted them on domestic force prostitution. And that's our fundamental complaint. And I think it was compounded if we take a look at instruction number 24, which again says, and again, this is from ER section 184, Your Honors. I'll read it in full. The fact that a person may have initially acquiesced or agreed to perform a commercial sex act does not preclude a finding the person was later compelled to engage in prostitution through force, fraud, or coercion. For example, if a victim willingly engaged in an act of prostitution, but later wanted to withdraw or refuse, and was compelled to continue to perform acts of prostitution through force, fraud, or coercion, then you may find that her later acts of prostitution were compelled by force, fraud, or coercion. Now the first point I make will be a minor one, but it shows you how this case was a jumble. The later acquiescence followed by withdrawal, followed by compulsion, may well be true about force and coercion. It can't be true for fraud on its face. If you come here voluntarily to be a prostitute and you want to withdraw and you're later compelled, you can't say that compulsion is evidence of fraud. It's evidence of threat or coercion, but it's not fraud. It's wrong on its face. Well, I'm not sure it's applicable in this case, but it may well be fraud in the sense that come and engage in prostitution and we will not compel you to do so. But in fact, you know darn well as soon as the person starts to back out, I'm going to lock her up and threaten her with all kinds of physical injury. That would be fraud. Okay. Well, I'll move to the second issue. That's true in this case, I'm not going to say, but that would be fraud. Okay. And I don't think the facts are here for that. And I think there's other exceptions to that, too. I think also you said there's lots of ways to make it fraud, but on its face it's a problematic instruction. But it's part of my general objection, it's part of Appellant's genuine concern that they brought and tried a domestic force prostitution case and to send people away to 30 to 40 years for jail for something that Congress can't, or at least in this case didn't outlaw, is impermissible. And they had a defense. And your honors may be skeptical of it. You may believe they should be guilty. But they had a right to tell those 12 people in a box, we hired these women knowing they'd be prostitutes and we didn't think this would happen. I think the language of Todd is, if it goes according to plan, we will use force. And that's how they upheld a sufficiency challenge much like the one you just heard. We're not here on a sufficiency challenge. We're here to say that we could have argued and should have been allowed to argue under properly constructed instructions that we didn't believe this was going to happen. And these stories were contested. I think the fact that, I think for at least one of the girls, it was hung for all of the victim's ages. There was no decision. For all the transportation counts and importation counts, I think 35 to 50, the jury threw their hand up. They were out for more than a week. And so plainly the government's presentation was harrowing. I thought the defense, and I think a fair reading, which we did present I think in an even-handed way, did undermine many of the claims of captivity, many of the claims of isolation, many of the claims of coercion and abuse that were raised. And a jury should have been entitled to listen to our defense. We didn't have a fair chance for that. Well, after the court gave its instructions, were there any objections to the instructions as given? No. Once the judge provided counsel information that a version of these would be given, essentially overruling the defense that both of them should not be given in their totality, there was no further objection raised by the record. These became the final instructions, and these are the ones we're challenging on appeal. I will say that during their closing arguments, the defense counsel did raise the mens rea argument I'm presenting to you now. This isn't something ginned up post-appeal. This is what they told the jury, but they were completely hamstrung. I'd make another point. These jury instructions were settled, I believe it was the 26th of January, mid-trial, more week to go in trial. I am confident that these instructions affected defendants' ability to testify in their own defense because these instructions permitted a forced prostitution conviction on its face. And so if you use any force in the United States, your mens rea became irrelevant, and it became a much more difficult case to try, a much more difficult case to defend. Unless the court has questions, I would address the 412 argument. In this case, we contend that the district court violated the defendant's confrontation rights and their rights to present a complete defense when it excluded questions, excluded evidence that the complainants had worked as prostitutes in Guatemala. We know that one of these women, her name was Kathy, she was an admitted prostitute in Guatemala. That was presented to the jury. That is the only one. We know another girl, Rosa Ura. She also went by Marina. She had been a visitor at Christina's Bar, sort of the recruiting station, the recruiting prostitution location in Guatemala. She ultimately confessed to the government after the defendants made their 412 showing that she was a prostitute. We presented evidence first. I believe there's an under seal filing by Mr. Price, which identifies witnesses who will come to say, we can identify these women, they're prostitutes at this bar. The jury was not told that. We know five other prostitutes, of the complaining witnesses, knew they were coming before they came to the United States to be prostitutes. Whether or not they actually worked as prostitutes in Guatemala, we were shielded from that or it was excluded. And appellants maintain here that the district court's decision to exclude this examination was unfair and it precluded our defense. In essence, one, we think the government opened the door. The government presented a theory for every one of these complainants. They presented a testimony with their work history in Guatemala. And with the exception of Kathy, all these women recited their work history, which did not include prostitution. And by inference, that means they did not work as a prostitute. But the district court said we could not inquire about that. These complainants also in a very sort of, each testimony was very similar for the ten complainants, was essentially included with a changed appearance. They had to learn how to put on a condom. They had to learn the tricks of the trade to borrow a pun that's applicable and hopefully not offensive. This all created an inference of innocence being bamboozled, their theory of prosecution, which they were welcome to. Defendants said we want to attack that. It's not true. We hired no prostitutes. That's how we're going to win. And the district court said you can't introduce evidence. You can't cross-examine. You can't even cross-examine in a non-leading way. There was a witness identified by Mr. Price who said he would come and identify this woman. You can't have him. Defendants said, defense counsel said, our clients have told us this. The district court ruled that, quote, was not evidence, close quote. The nature of your client's statement not being evidence is unknown to me as a practitioner. We think this was unfair. First of all, they opened the door, and by their presentation on direct, we were entitled to cross-examination on the same subjects. Second, we think under constitutional standards, we were entitled to examine these witnesses under it because it was relevant to the mens rea defense. Obviously, it would lessen the likelihood that the defendants knew that force would be used if they believed that they were hiring professionals. I posit that today in Los Angeles, it's near the end of the week, there's going to be some young women who are going to get on some jets at Southwest Airlines or Virgin. They're going to fly to Las Vegas for the weekend. They're going to work in the trades, and they're going there voluntarily. Some of them are going to work for other people, and I would posit that the people they're working for don't believe they're going to use force or coercion or threats because the women that are flying in from L.A. today are professionals. This is what they do, and that that's a different circumstance than Todd, and that's different than sort of the scope of what you were discussing in the last case. Well, let me ask you this, and I just don't recall the 412 exceptions, but obviously the Confrontation Clause doesn't trump the Confrontation Clause. So when you say it's unfair, it's got to be more than unfair. It has to violate Sixth Amendment right to confrontation. Well, yeah, it has to fit the constitutional exception. Assuming my open-the-door argument doesn't carry today, in which case 412 doesn't apply at all, and assuming that sex trafficking by force of knowledge is actually a sexual misconduct case, if we take those off the bat, then you're absolutely right, Your Honor. The constitutional exception, which I believe is 412C, it has to meet the constitutional requirement, which means, one, the evidence has to be relevant, and I've explained why I believe it is relevant, and then it has to be, the standard would be, the government would have to show that legitimate interests outweigh it, and that, excuse me, Your Honors, that it's capable of jury assessment. It's the sole evidence, not cumulative, and it's a major part of the defense, and here was a major part of the defense. Our ability to examine these witnesses and demonstrate that they were, in fact, professionals. It also was going to be a way to challenge the age. The government said some of these girls were as young as 14 years old. We disputed that, and we were able to establish they were prostitutes in Guatemala before they came here. That would make that less likely. That would affect that, so it was relevant to it, and it was a major part of our defense, and it was completely stricken. The justifications by the district court were essentially, one, it's irrelevant, which I think I've argued, and if the court has truck with that, I would address it, and the district court said that either their testimony on cross-examination or the testimony of a firsthand witness found in Guatemala would be reputation evidence or opinion evidence, which, again, great respect for Judge Morrow in a very difficult emotional case. I don't think that fits the standards of either reputation or opinion, and my colleague, Mr. Kinn, will tell me if I'm wrong when he replaces me here at the podium. And those were illegitimate reasons to stop these women from presenting a defense, and they were entitled to present a defense. I see the red light is on. If the court would indulge me with Batson, I'd address it. If the court would like to hear from my colleague, I'll take direction. All right. I'd like to ask you a specific question on one of the arguments you raised on behalf of your client personally, and that's acceptance of responsibility. Yes. I understand from your brief it says that she signed the package deal prior to trial. Yes. Gladys did. There's no citation to the record. Was that ñ did the district court judge know at the time of sentencing that she had signed a package deal? She did, and I believe my colleague, Mr. Kinn, Well, I'll take on the break while he's up there. I'll try to locate it in the government submittal that comes to record. The government has done us the favor of presenting it to the court, so there is a record citation in there, and the district judge was aware of it at the time. But it wasn't objected to, so it's on plain error review. You're correct. It is plain error review. The district court may not have been aware of it. That's right. I'll retract that. You are correct, Your Honor. We didn't present it to the district judge because it is plain error review. And I think when I speak for my client only on sentencing issues, I'll be clear about that. Yeah. I think nearly most of ñ we've conceded plain error for almost everything we're raising on that. I think that's the nature of the record, and you can't run away from what was said in the district court. Appreciate that. Thank you. Thank you, Your Honors. All right. May it please the Court. Curtis Kin on behalf of the United States. Turning first, then, to the jury instruction in the 412 issue, I think the problem here is just a misapprehension of the statute on the part of the defendants, and their arguments fail as a result. The 1591 was, in fact, passed to combat forced prostitution, and to sweep broadly then, it captured all the activities that would facilitate it, including recruiting, enticing, transporting, harboring, providing, obtaining, by even those who were not forcing the prostitution, but those who engaged in those activities, knowing that it would facilitate the forced prostitution. That's the way the statute sweeps, and it sweeps broadly. Then, as a result here, then, the defendants were not the ones who actually were forcing the prostitution, and as a result, when they harbored and they enticed, they transported and they provided and obtained, they knew exactly what was going on. Given that, then, the fact that the jury instruction commented on how forced fraud and coercion evidence might be interpreted couldn't have misled the jury at all. And, in fact, I believe as Judge Fletcher noted, instruction number 23, which was not objected to, by the way, in fact simply explained to the jury the way in which the jury was entitled to, but did not have to, interpret the ongoing forced fraud and coercion that was used and how it might link up possibly or potentially to the sex acts that were caused by the defendants. And the same thing with the Rule 412 evidence. Again, at all times in the district court, the argument was, is that the 412 evidence of the alleged prior prostitution or questioning of the victims thereof would relate to the victim's consent, their consent to be prostitutes. In no way ever was it presented to the district court that this had to bear on the defendants' knowledge. And how could it? Because the defendants' knowledge was never at issue. What was the central issue at trial was not this new argument on appeal that the defendants had no idea what they would do or what was going to be done to these victims. The central issue at trial was, were these victims forced, defrauded, and coerced into having sex multiple times a day against their will? And in that regard, then, the victims were called liars and the like. And that was the defense at trial. When you look at the opening, the directs, the lengthy cross-examinations, the closing arguments, all of that had to do with that central issue at trial. Here we are on appeal, and the defendants actually make the very remarkable, if you will, remarkable concession that forced fraud and coercion did happen. These victims were forced and defrauded and coerced into causing prostitution, but under this new sort of interpretation of the statute, we didn't know that was going to happen. This is a new one. This is new, both with the instructional error as well as to 412. That's why we're on plain error review. If I may actually indulge you, talk about briefly some of the points, I believe, that the Court asked of my colleague, and then I, in fact, will sit down. As to jury instructions, I think there's no serious doubt, in fact, that we were on plain error here. There was no futility in having to make arguments here. Judge Morrow very carefully made it very clear at the beginning of that jury charging conference that you needed to raise your objections then and there. And, in fact, if you look at GER 2091, the district court sets out what we're here today. I've had to ---- Kennedy, you have to present your objections then and there. Well, Your Honor, in the specifics of this particular case, the Court says last week, last week, I provided counsel with new instructions that are going to form the basis of our discussions today, and I'd like to simply go through those instructions one by one to make sure that any comments or objections or modifications are placed on the record. That was the time to do it. If there was actually any mistake as to the Court's intent or what the defendants understood, when you'd only look at that same hearing transcript, and I point the Court's attention to GER 2124 and 2125, it's actually a discussion raised by counsel for Defendant Merriam at the time, Mr. George Beeler. He says, Your Honor, back to instruction number 22. When I said earlier, no objection, by the way, I didn't mean to waive my earlier objections that I had posed in writing. So everybody in that courtroom, government counsel, the court, defense counsel, knew, in fact, that that was the time to lodge objections. Was there ever a knowledge instruction requested, an instruction that would have said, now, in order to convict, you've got to find at the time of the predicate of the offense, transporting, facilitating, maintaining, whatever it is, the defendant had to know that force, fire, coercion will be used? Was there ever an instruction requested that would state that? No, Your Honor. The defendants never requested that. And now you can say, if he's wrong, you can tell me on rebuttal. That's what rebuttal is for, Your Honor. But to handle that to the extent it was ever an issue, because the central issue of trials was were the victims forced to do this, not what the defendants knew, instruction number 20, in fact, handled that. In fact, I would submit, if we – if this was truly the defendants' defense, was that at the time of recruitment, and recruitment alone, we didn't know what was going to happen in the United States, but we admit when they got here they were forced, defrauded, and coerced into working as prostitutes, we would have happily dealt with that as their defense, because the big issue of trial was trying to prove beyond a reasonable doubt that the victims were forced, frauded, and coerced into working as prostitutes. So as a matter of jury instructional error, they simply just didn't rate it that way. It was never presented. The district court did the best it could. That's why we're on plain error review. There was no error that was clear. Was there an opportunity for them, the defense counsel, to voice any objection after the instructions were given? Your Honor, I don't recall, but I do know typically Judge Mohr and the other district courts often, after the instructions are read, will call everybody to sidebar or otherwise ask if there's any other further objections. I don't recall. If that is in the record, I could look, and I will certainly let the Court know that by a Rule 28J letter if that's important to the Court after the fact. I probably would be able to find that in the record, but I don't know, standing here today, if that is, in fact, correct. Well, at one time, that certainly was the custom, that you call counsel to sidebar and ask if they have any objections to the charges given. Correct, Your Honor. And I think that is probably what happened here. I don't have it at the tips of my fingers whether that, in fact, did, though. If there are no further questions on the jury instructions on the Rule 412 issue, I can turn. I think, Judge Fletcher, you mentioned that you might have at least one issue as to sentencing. It occurs to me that perhaps the obstruction of justice as to Maribel is wrong. Possibly, Your Honor. Number one, let me start with harmless error. So that might be an issue that, in fact, the Court does not even have to address. As we looked, there is no error procedural at sentencing if the guideline range, which is the starting point, would not have changed at all. With respect to Gladys and Angela, there needed to be ten levels of error. With respect to Gabriel and Miriam, there needed to be six levels of error. With respect to Maribel, who does make this particular claim, there needed to be four levels of error. Obstruction of justice, only two levels. If the Court finds that all of the other enhancements were okay, the Court need not reach that issue. If your answer is the guideline, even if that is wrong, the guideline range doesn't change. Absolutely. And so no harmless error. In any event, Your Honor, I do not believe that there was an ex post facto issue here. What's clear is that with respect to the obstruction that Miriam – that Maribel engaged in, when she was arrested along with her victim, Tanya, she was standing there as Tanya then lied to the police, as she was instructed to do, on October 22nd, 2006, saying, I'm working – essentially, I'm working as a prostitute, not turning in Maribel and otherwise. That's what she had always been instructed to do. That was the obstruction. And, of course, I believe it's undisputed that the government investigation had at the very least begun as of October 11th, 2006, earlier. And this is all conduct after, I believe, the obstruction would apply. So if there are no further questions by this Court, I would submit on the papers. Thank you. Thank you for your time. Thank you, Your Honors. And thank you, Mr. Kinn, for sharing the bounty of being able to bring all the books with you. I'll answer Judge Fletcher's question first. To the extent, there was two instructions given regarding the elements of the crime that were assented to by the defendants. One was part of the joint instructions, which became instruction number 20, which obviously an appeal was not raised. We would also point you to Government Excerpts of Record 2945, which we found in Volume 12, which presents submental arguments from Defendant Vincente, which includes his statement of the offense, which I'm trying to find, which sets forth an additional objection. I don't believe, there we go. You'll find the exact pin site at GER 2948. With respect to knowledge, the element that was suggested, and it was for an individual complainant, that defendant knowingly recruited, enticed, harbored, transported, provided, or attained a person that is, in this case, M.C. Second, that the defendant also knew either or both of the following, that fraud, that forced fraud or coercion would be used to cause M.C. to engage in a commercial sex act, and or be, the defendant knew that M.C. was under the age of 18 and would be caused to engage in a commercial sex act. And third, that the offense was in or affecting interstate commerce. Now, I don't have that page in front of me. Precisely, what's that doing? Is that a request for a jury instruction? Yes, it is, Your Honor. It's one of the, when the, when sort of the welter of the government's submental instructions came in, the defendant's objections came in, and the defendants also thereafter, I think it was a week afterwards, submitted these additional instructions to be considered at the charging conference. And the district judge did what then? The district judge, and when she provided, you'll find this at government excerpts of record 1737. Say that again. 1737, Your Honor, 1737. And here's what the district court said. She's passed out, her clerk has passed out the instructions, and she informs counsel as follows. You will see in these instructions, most particularly with regard to the instructions that the government requested and multiple defense counsel opposed, either that the instruction is not in this packet, which you should take as an indication that the court's preliminary view is that it should not be given, or that there is a modified version of the instruction in this packet, which you should take as the court's view that some version of that instruction is appropriate, and the court has made an attempt to provide you with the version that it believes would be properly given. And was this statement by the court after the requested jury instruction that you just read to me from 2948? Yes, Your Honor. Was there then any objection for failure to give that instruction? There was no further objections thereafter. I think that is the last point on the record. So, again, it goes down to the point I was making with whether it's a plain error review or de novo review is whether defense counsel is required to say no further objection at the Rule 30 conference or not. And for the reasons I've expressed, we obviously suggested that. Well, after instructions are given and after they have closing argument, that's the best time to find out whether there are any objections to the instructions as given. I couldn't agree more, Your Honor. I think that... You know why? Because both sides are high, and after giving their arguments, they're all convinced that they're going to succeed. And that's when the court ought to know whether there are any objections. And most of the time, the counsel will say, no, we're satisfied with the instructions as given. Well, I think that's a good point, Your Honor. I've had the pleasure of hearing before a wide variety of district judges. With all great respect to the district judge who handled this case, it was a difficult case. It was an emotional case. It was a longstanding case. I genuinely get the sense by where at this time of the trial, she held countless hearings on the 412 issue. That there was countless hearings on the 412 issue. This was one of those difficult, challenging cases, which I think at times causes sessions to get shorter, rulings to get terser. The end is in sight. And I think that may be why in certain cases you get that kind of opportunity. Lord knows I've had it, where in other cases you don't. I want to say one more thing about the jury instruction argument, and I'd like to make one rebuttal point to the 412 argument, if I may. You're just speculating. Excuse me, Your Honor? You're just speculating. I was giving my opinion, Your Honor. There's no evidence that it's not even worth the paper it's written on, I'm confident. On the jury instruction issue, I would ask the court to take a look at Clerk's Record 603, where the government responded substantively to the arguments raised by counsel. I think those issues were necessarily joined before the court resolved them sufficient for Rule 51 purposes. The last thing I want to address, it's one thing I do have a great disagreement with my colleague, Mr. Kinn. He says that we never articulated this theory of relevance before. One, it's wrong as a matter of fact, and it's wrong as a matter of law. I'll start with the law. Claims are preserved, not arguments. We argued it was relevant. Relevance is preserved. Done. Waheed. Black letter, Ninth Circuit law. It doesn't matter. We raised the specific relevance argument. I will read from sealed excerpts of Record 66. This is defense counsel, I believe it's Mr. Belter. I'm sorry, can you give me that page number again? Certainly, Your Honor. USER, under sealed excerpts of Record 66. The defendants recruited prostitutes because that's what they were. They didn't want to force people who were not prostitutes. They wanted to recruit people who were either prostitutes already or wanted to be prostitutes. There was no reason to recruit people who were not prostitutes and did not want to work as prostitutes. Sorry, that was Mr. Cephas who made that argument, and then the district court credited it. I'd also direct Your Honor's attention to page 147 to 148 of the same excerpts of Record. This time it's Mr. Buehler informing the district court, and again these are all about the 412 issue, why it's relevant, why it should be permitted, this examination, permitted this evidence. If somebody in Los Angeles and they want to entice people to the United States, bring people to the United States to engage in prostitution, that one would go to prostitutes in Guatemala and ask them to come up here and be part of a prostitution ring in Los Angeles rather than targeting people who aren't prostitutes. That's just because you are now, if you don't do it, what he suggests is, you are now bringing up people that you have to force to do something they don't want to do. You have to guard them, all these things. So it would be logical if you're going to run a prostitution ring in Los Angeles to bring up people from Guatemala who were formerly prostitutes. I won't read the rest of them to you, but I would point you to the same excerpts of Record 132 where the identical relevance grounds are raised, where the same open-the-door rationale was presented to the district court. I would point you to 127 and 87 to 88 of the Seals' excerpts of Record. The same constitutional claims were raised at 150. The same credibility to arguments were raised in all of these pages. This isn't plain error. The district court held multiple hearings on 412. She considered these arguments. She determined it wasn't relevant. She determined it was opinion evidence, reputation evidence only. The learned district court was incorrect, and her error prejudiced our rights to a fair defense. The defendants in this case deserve that, especially considering the stakes. We ask Your Honor to please give it to them. Thank you. Well, how did that prejudice your right to a fair defense? Well, I think if the jury had heard evidence that, in fact, the women who were targeted for this ring were brought to America, were in fact prostitutes, they would have been more likely to credit the defense that these women did not know at the time of the recruitment that force or threats or coercion would be used because they had believed they had hired known prostitutes who would willingly engage in the trade. And by shielding the jury from even learning that information and at the same time presenting a half-narrative by which each one of these complainants essentially denied being prostitutes but without being allowed to have that question put to them, shaded the case in favor of the government and distorted the fact-finding process. And I think it's reasonably likely that it could have made a difference. It's certainly not harmless beyond a reasonable doubt. So in other words, you're saying if the jury knew that these women were prostitutes in another country, that somehow the jury would overlook what was occurring in this country? No. And I think it goes back to Judge Fletcher. I think this entire panel today has put its finger on the key issue with the statute. It's a forward-looking statute, but it sets forth a moment in time where we start our look. And it depends what the crime is. In this case, it's trafficking. It's the transportation. It's the international transportation from Mexico to the U.S. or from Guatemala to the U.S. or any way along that run. And we say at the moment, the defendant, the perpetrator is recruiting these people. Do they know that force is going to be used? If the answer to that question is yes, beyond a reasonable doubt, and force is actually used, they get a 15-year sentence at least. Let me ask you this. I'm sorry. I probably should have asked it earlier. I need to go back and reread the indictment. Did the indictment track the statutory language? Because transporting is only one of the predicate acts. Maintaining is another. That's a good point. Not only did the indictment track the language, the instruction did too, and that's the point. Well, okay. But what that means is they're maintaining these women during the entire time they're in Los Angeles, even after all this behavior started to happen. So if I'm maintaining somebody and yesterday I locked her in and I'm maintaining her tomorrow, well, I'm pretty sure I'm going to know I'm going to lock her in tomorrow too. Well, that's a good point, Your Honor. Here's the problems I would identify with it. One, it has to be maintaining in interstate commerce. The language of the statute connects the two. Two, it wasn't argued to this jury. They didn't find that. No one thought about that until an answering brief on appeal and a wise juror said an argument. But that's not what this jury found. And so even then, they have to show that's in interstate commerce, and they still have to show knowledge at that point. And even then, that doesn't mean our defense was irrelevant. That doesn't mean we weren't permitted to do it. Maybe they would have overcome it. But to say, ab initio, one, we're going to charge you that you can be convicted of false prostitution. Two, they can tell you this story about all these girls prior acts that's success, not prostitutes, but you can't even inquire, much less present affirmative evidence from your clients that they were prostitutes. I do think that's unfair. I really do. It was going to be a hard case no matter what. On retrial, it will be a hard case. These women deserve a hard case. Thank you. Thank you. All right. That concludes this session of the court, and we'll recess until 9 a.m. tomorrow morning.
judges: Bennett, Pregerson, Fletcher